SCOTT A. KRONLAND (#171693)
LINDA LYE (SBN #215584)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-Mail: skronland@altshulerberzon.com
E-Mail: llye@altshulerberzon.com

Attorneys for Defendant Local 6434,
United Long-Term Care Workers' Union,
Service Employees International Union

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| Elaine L. Chao, Secretary of Labor, United States Department of Labor, | ) ) ) | Case No. CV08-06838 PSG (JWJx) |
| Plaintiff, | ) ) ) | **DEFENDANT'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| vs. | ) ) | |
| Local 6434, United Long-Term Care Workers' Union, Service Employees International Union, | ) ) ) ) | Date: October 5, 2009 Time: 2:30 p.m. Place: Courtroom 790 - Roybal The Hon. Philip S. Gutierrez |
| Defendant. | ) ) | |
| _____ | ) | |

DEF's MEMORANDUM OF CONTENTIONS OF FACT AND LAW, Case No. CV08-06838 PSG (JWJx)

## MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Defendant Local 6434, United Long Term Care Workers Union, Service Employees International Union ("Local 6434") hereby submits this Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4.

### I.    Summary and Elements Of Plaintiff's Claim

Plaintiff Department of Labor ("DOL") asserts only one claim in this case:

Claim 1:    The nomination requirement used by Local 6434 in its Spring 2008 election for union officers violates the Labor Management Reporting and Disclosure Act ("LMRDA"), in particular, Section 401(e)'s requirement that "[i]n any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates . . . ."  29 U.S.C. §481(e).

Elements:    (1) The nomination requirement used by Local 6434 in its Spring 2008 election was unreasonable (*see* 29 U.S.C. §481(e)); and

(2) The unreasonableness of the nomination requirement may have affected the outcome of the election.  *See* 29 U.S.C. §481(e); 481(c)(1), (2).

### II.    Key Evidence In Opposition To Plaintiff's Claim

The evidence at trial would show that the nomination requirement actually used was not unreasonable and served the function of ensuring that candidates for office have either a breadth or depth of support among the union's members.

The Constitution and Bylaws of Local 6434 in effect at the time of its 2008 officer election required candidates for union-wide office to obtain nominating petitions numbering 3% of the members in good standing in order to be nominated for office. (Ex. 9 at 18.)  Three percent of the union's overall membership at the time amounted to 4,858 signatures. (Ex. 4.)  Local 6434's Constitution and Bylaws required candidates for division-wide office to obtain nominating petitions numbering 3% of the members in good standing of the division. (Ex. 9 at 18.)

Complainant Eva Lozada contended that the signature gathering requirement was unreasonable because homecare workers (who make up a substantial portion of the union's membership) "do not work side by side with other union members in a common facility. . . . [W]e are spread all over the state of California and have not a clue who are our fellow union members. As a practical matter, we just do not rub shoulders with our fellow union members except on rare occasions." (Ex. 1.)

The evidence at trial will show, however, that Local 6434 members have ample opportunity to gather signatures. Union events at which members congregate are routinely held. In fact, at least 10 such events were held during Ms. Lozada's district during the nomination period. (Ex. 7.) Moreover, as Ms. Lozada herself stated in an interview with DOL, homecare workers routinely drop off their time sheets in a central location. (Ex. 25.) Moreover, Ms. Lozada's contention that homecare workers "have not a clue who" as to the identity of their fellow union members is belied by her own statement to DOL that she has "conversations with other home care workers" and "is well known as an active union member among . . . home care workers." (Ex. 25.) Further, the internet and related tools allow homecare workers to meet, communicate, and network with each other, even if they have never physically met.

Moreover, the evidence at trial will also show that the nomination requirement was interpreted to permit duplicate signatures, such that a single member could sign multiple petitions which would each separately count. (Ex. 10.) Thus, even if a particular union member felt unable to collect the requisite number of signatures from separate people, she could ask members who were strongly supportive of her candidacy to sign multiple petitions. In this way, the nomination requirement served the purpose of measuring either the breadth or depth of a candidate's support.

## III.   Summary And Elements Of Defendant's Defenses and Contentions Regarding Remedy

Local 6434 asserts the following defenses and contentions regarding remedy:

Defense 1:   The nomination requirement did not violate Section 401(e) of the LMRDA.

Element:   The nomination requirement was not unreasonable.

Defense 2:   This action is moot.

Elements:   Events have resulted in Plaintiff obtaining the relief sought.

Contention re:

Remedy 1:   If this Court were to find a violation of the LMRDA, no supervised election may be required except upon Local 6434's emergence from trusteeship.

Element:   A valid trusteeship has been established at Local 6434 which is not currently contested by DOL or union members.

Contention re:

Remedy 2:   If this Court were to find a violation of the LMRDA, only Local 6434, and not its successor, could be required to conduct an election under the Plaintiff's supervision.

Element:   Pursuant to resolution adopted by SEIU International Executive Board, Local 6434's successor will be a newly formed or merged labor organization.

**IV.     Key Evidence In Support Of Defendant's Defenses and Contentions Regarding Remedy**

Defense 1: The nomination requirement did not violate Section 401(e) of the LMRDA.

The evidence at trial, discussed *supra* at Section II, would show that the nomination requirement was not unreasonable and served the function of ensuring that candidates for office have either a breadth or depth of support among the union's members.

Defense 2: This action is moot.

The evidence at trial would show that, based on events unrelated to the nomination requirement or any other facts giving rise to Plaintiff's claim, Local 6434 was placed into a valid trusteeship by its parent body, the Service Employees International Union ("SEIU"). (Exs. 101-03.)  The trusteeship was imposed on August 22, 2008, after the Spring 2008 union officer election at issue in this case, and before Plaintiff filed this suit.  By virtue of the trusteeship, all of the officers elected in the Spring 2008 election were automatically removed from office.  (Ex. 100.)  Former retired California Supreme Court Justice Joseph Grodin conducted a hearing pursuant to the procedures for imposing trusteeships set forth in SEIU's Constitution and Bylaws and found that it was necessary to impose the trusteeship to protect the members' best interests.  (Ex. 102.)  The trusteeship remains in effect.  The DOL and union members do not currently contest the validity of the trusteeship.  Revised bylaws to be developed during the trusteeship will eliminate the challenged signature requirement and replace it with a substantially reduced signature requirement.  The legal significance of these facts is discussed in Section VI below.

<u>Contention re: Remedy 1: If this Court were to find a violation of the LMRDA, no supervised election may be required except upon Local 6434's emergence from trusteeship.</u>

The evidence relevant to this Contention is the same evidence discussed above in connection with Defense Number 2. The legal significance of these facts are discussed in Section VI below.

<u>Contention re: Remedy 2: If this Court were to find a violation of the LMRDA, only Local 6434, and not its successor, could be required to conduct an election under the Plaintiff's supervision.</u>

The evidence at trial would show that a jurisdictional decision adopted in January 2009 by the International Executive Board of its parent body, SEIU, calls for Local 6434 to be reorganized to realign the jurisdiction of SEIU California unions with members who work in the long-term healthcare industry. (Ex. 104.) Implementation of that resolution would entail the revocation of Local 6434's charter and the merger and consolidation of its members with members from two other unions to form a new local union of all long-term care workers in California in order to unify workers in that sector. (*Id*.) The legal significance of these facts is discussed in Section VI below.

**V.    Anticipated Evidentiary Issues**

Defendant does not anticipate evidentiary issues.

**VI.    Issues of Law**

<u>Defense 1: Reasonableness of Nomination Requirement.</u>

This case presents the mixed question of fact and law, whether the nomination requirement used by Local 6434 in its Spring 2008 was "reasonable" within the meaning of Section 401(e) of the LMRDA. For the reasons discussed *infra* at Section II, the requirement was reasonable.

Defense 2: Mootness.

This case presents a mootness question.  The court should dismiss this case as moot because events have resulted in Plaintiff obtaining the relief sought.

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).  A case is moot if the plaintiff obtained the relief sought. *See Lane v. Williams*, 455 U.S. 624, 633 (1982).

Plaintiff in this case seeks to challenge the conduct of the Spring 2008 officer election, contending that the nomination requirement was unreasonable.  But this action has been mooted by the trusteeship at Local 6434.  By virtue of SEIU's Constitution and Bylaws, the trusteeship imposed on August 22, 2008 had the effect of automatically removing from office all the officers elected in the Spring 2008 election at issue in this case. (Ex. 100 at Art. VIII, Sec 7(a) (trusteeship "shall have the effect of removing the officers of the Local Union").) Thus, the challenged election has already effectively been rendered "null and void," the primary relief sought by Plaintiff in this case. (Complaint at 5.)   In addition, the Trustee of Local 6434 will be supervising the development of a new set of bylaws that will not contain the same nomination requirement challenged in this case and will instead contain a substantially reduced signature requirement. Thus, any future election at Local 6434 will not involve the nomination requirement challenged by Plaintiff in this case.

Plaintiff may rely on *Tam v. Rutledge*, 475 F.Supp. 559 (D. Haw. 1979), to argue that this case is not moot.  In *Tam*, the court held that the imposition of a trusteeship did not oust the Secretary of Labor from jurisdiction to proceed with a challenge to a union election. *Id.* at 572.

*Tam* is distinguishable and the concerns underlying the court's reasoning are simply not implicated here.  First, the *Tam* court expressly noted that the Secretary's action in that case was "actually filed . . . prior to the imposition of a

trusteeship." *Id.* Second, the court observed that concerns relating to the election "may be the same ones that led to the imposition of a trusteeship." *Id.* In other words, the *Tam* court was concerned that the union not be permitted to "game" the system and oust the Secretary of jurisdiction, by imposing a trusteeship after the Secretary filed suit. Nor should the union be permitted to evade review of its election-related conduct where the very same alleged abuses led to the imposition of the trusteeship: Otherwise, misconduct (and subsequent imposition of a trusteeship) could be used as a basis for avoiding judicial review of that very misconduct. The *Tam* court appropriately concluded that such a result was improper and found the trusteeship in that case not to moot the Section 404 suit.

The *Tam* court's concerns are not present here. Local 6434, for reasons totally independent of the allegedly unreasonable nomination requirement, was placed in trusteeship by its parent body, SEIU. SEIU took this step *before* this lawsuit was instituted. The trusteeship is not currently being contested by the DOL or union members. As a result, there is simply no danger that SEIU placed Local 6434 in trusteeship as part of some kind of strategic effort to moot this case. Further, former California Supreme Court Justice Joseph Grodin conducted a hearing pursuant to the procedures for imposing trusteeships set forth in SEIU's Constitution and Bylaws and found that it was necessary to impose the trusteeship to protect the members' best interests. (Ex. 102.) The trusteeship was imposed for reasons totally unrelated to the nomination requirement at issue here and serves the important function of protecting the members. This is not a case where the union is hiding behind misconduct (leading to imposition of the trusteeship) to avoid judicial review of the same misconduct.

In short, this case is moot because the election challenged by Plaintiff in this case has already been effectively nullified by the trusteeship, and going forward, the nomination petition signature requirement challenged by Plaintiff in this case will not apply in any future election at Local 6434, due to anticipated revision of

the bylaws.  *Tam* is distinguishable because the trusteeship at Local 6434 was imposed *before* this action was filed and was imposed for reasons *unrelated* to the allegations in this case.

Contention re: Remedy 1: If this Court were to find a violation of the LMRDA, no supervised election may be required except upon Local 6434's emergence from trusteeship.

This case presents the question of the nature of the appropriate remedy. Any remedial order by this Court should, consistent with DOL regulations, require Local 6434 to conduct a supervised election only upon its emergence from trusteeship and not prior to that time.

One of the overarching goals of the LMRDA is to protect union democracy. *See* 29 U.S.C. §401.  Title III of the LMRDA pertains to trusteeships.  *See* 29 U.S.C. §461 *et seq*.  Title IV pertains to elections.  *See* 29 U.S.C. §481 *et seq*.  In enacting the trusteeship provisions of the LMRDA, Congress recognized that trusteeships can serve the important function "of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."  29 U.S.C. §462.  To require a mechanical application of Title IV in every instance could interfere with a union's ability to carry out these important and "legitimate objects."  *Id.*  That being so, DOL regulations provide that the imposition of a valid trusteeship generally suspends the requirements of the election provisions (Title IV) of the LMRDA.  *See* 29 CFR §§452.8, 452.15.  These regulations provide, however, that "title IV would apply" "when a regular election of officers or an election for purposes of terminating the trusteeship is being held."  29 CFR §452.15.

Consistent with these regulations, and because Local 6434 is currently in trusteeship, Local 6434 should not be required to conduct a new election under the

Plaintiff's supervision until it conducts "a regular election of officers or an election for purposes of terminating the trusteeship." *Id.* In other words, it should not be required to conduct an election prior to its emergence from trusteeship.

Nor is it appropriate for an order in this case to specify when the trusteeship at Local 6434 must be terminated. The trusteeship was imposed because of significant financial malfeasance by the former leadership of Local 6434. The timing of Local 6434's release from trusteeship will be based on considerations of whether significant remedial actions are in place that allow for the members' interests to be safeguarded, consistent with the LMRDA. Title III of the LMRDA sets forth the procedure for challenging a trusteeship. *See* 29 U.S.C. §464. Plaintiff filed suit exclusively under Title IV of the LMRDA. This election lawsuit cannot be used as a collateral attack on the trusteeship.

Plaintiff may contend that it has discretion to determine when to require the conduct of an election ordered by this Court. It is well-established, however, that courts have the authority to specify the timing of an election, even over the objections of DOL. *See Usery v. Int'l Org. of Masters, Mates & Pilots,* 538 F.2d 946, 952 n. 11 ("The Secretary asserts that his authority to decide *when* to hold the supervised election is unreviewable. We do not agree."); *Chao v. Branch 4798,* 532 F.Supp.2d 783, 794 (E.D. Va. 2008) (although statute makes remedy mandatory, "nothing in the statute indicates that a district court . . . must direct an *immediate* new election under the supervision of the Secretary."); *Brock v. Local 471, Hotel, Motel & Restaurant Employees,* 706 F.Supp. 175 (N.D.N.Y. 1989) (refusing to require union to hold new election immediately and instead requiring supervised election only of next regularly scheduled election, which was two years from district court decision).

Contention re: Remedy 2: If this Court were to find a violation of the LMRDA, only Local 6434, and not its successor, could be required to conduct an election under the Plaintiff's supervision.

This case presents a second question relating to remedy. Any remedy should only run to Local 6434, the defendant in this action.

The jurisdictional realignment decision of the SEIU International Executive Board, which would unite SEIU local unions with members in the long-term healthcare industry in California, calls for Local 6434's charter to be revoked and its members merged and consolidated with members from two other unions to form a new SEIU local union for California long-term care workers. (Ex. 104.) Under DOL regulations, "[t]he initial selection of officers by newly formed or merged labor organizations is not subject to the requirements of title IV." 29 CFR §452.14. That being so, any remedial order entered by this Court should apply only to Local 6434 (which is in any event the only defendant to this action) because any successor entity to Local 6434 will be a "newly formed or merged labor organization[]."

## VII. Other issues

Defendant does not request bifurcation. No issues are triable to a jury as the relief sought is purely equitable. No party contends that attorneys' fees are recoverable.

Dated: September 14, 2009      Respectfully submitted,

SCOTT A. KRONLAND
LINDA LYE
Altshuler Berzon LLP

By: /s/ Linda Lye
         Linda Lye

Attorneys for Defendant
Long 6434, United Long-Term Care Workers' Union, Service Employees International Union